UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRENTON JARED POWELL,<br><br>Defendant. | Case No. 4:21-cr-00290-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Trenton Jared Powell's Motion to Revoke Detention Order (Dkt. 33). The briefing is complete and the Court conducted a hearing on the matter on March 11, 2022. For the reasons explained below, the Court will deny the motion and affirm the Magistrate Judge's detention order.

## BACKGROUND

Mr. Powell is charged with six counts of sexual exploitation of a minor child, two counts of attempted sexual exploitation of a minor child, and three counts of receipt of child pornography. *See Indictment,* Dkt. 1. He was arrested on October 27, 2021, and United States Magistrate Judge Raymond Patricco issued a detention order on November 1, 2021. *See* Dkt. 15, 20.  Mr. Powell appeals that order.

MEMORANDUM DECISION AND ORDER - 1

## STANDARD OF REVIEW

The Bail Reform Act gives Mr. Powell the right to appeal the detention order to the district court. *See* 18 U.S.C. § 3145(b). On appeal, the district court reviews the matter de novo and makes its own independent determination on the correctness of the magistrate judge's findings – without giving any deference to those findings. *United States v. Keonig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The district court may conduct an evidentiary hearing "if necessary or desirable," but it "is not required to start over in every case, and proceed as if the magistrate's decision and findings do not exist." *Id.* at 1191-92. And, in any event, Mr. Powell's appeal of the detention order must be determined "promptly." 18 U.S.C. § 3145(a).

## ANALYSIS

1. **The Governing Legal Standards**

The release or detention of a defendant pending trial is governed by the Bail Reform Act, 18 U.S.C. § 3142, which requires the release of a person pending trial unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e)(1). Thus, the statutory presumption is first in favor of release on personal recognizance or on "an unsecured appearance bond in an amount specified by the court." 18 U.S.C. § 3142(b); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). A

rebuttable presumption arises under 18 U.S.C. § 3142(e)(3), however, where, as here, the judicial officer finds there is probable cause to believe the person committed certain offenses involving a minor victim – including statutes under which the Defendant in this case has been charged. In that event, it is presumed that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. *See* 18 U.S.C. § 3142(e)(3).

  2. Application

Here, based on the record in this case, the Court finds there is probable cause to believe the defendant committed the relevant crimes. Thus, the Court's first task is to determine whether Mr. Powell has rebutted the presumption favoring detention. At the hearing below and at the hearing before this Court, the defense pointed to these facts: (1) Mr. Powell has been on pretrial release related to his state case for several months without any issue; (2) he is a property owner (he owns a home in Idaho); (3) he resides in Pocatello with his son, his wife, and his parents; (4) he is the sole source of support for those family members living with him; (5) he is a business owner who employs four individuals; and (6) his criminal history – other than the charges he is currently facing – is relatively dated. *See Transcript,* Dkt. 33-2, at 6-8; *see also Attachment 1 to Motion,* Dkt. 33-1 (email from state probation officer). Based on this record, the Court finds that the

MEMORANDUM DECISION AND ORDER - 3

defendant has presented evidence sufficient to rebut the presumption.

The burden thus shifts to the government to show by "clear and convincing evidence, that the Defendant is a danger to any other person or the community." *Hir*, 517 F.3d at 1086; 18 U.S.C. § 3142(f)(2)(B).[1] To carry this burden, the government must show that no possible conditions of release could ameliorate that risk. *See* 18 U.S.C. §3142 (c),(e).

There are four statutory factors to be considered in making this determination, which are detailed in § 3142(g): (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including their character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug and alcohol abuse; and (4) the nature and seriousness of danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g). The Court takes into account all available information concerning the factors set forth in § 3142(g). Additionally, the presumption of dangerousness "is not erased when a defendant proffers evidence to

---

[1] On appeal, the government does not argue that the defendant is a flight risk. Therefore, the Court will not address this aspect of 18 U.S.C. § 3142 other than to note that it agrees with the Magistrate Judge's findings on this score as well. For all the reasons noted by Judge Patricco, the Court finds that the Defendant is not a flight risk.

rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *Hir,* 517 F.3d at 1086 (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

Having conducted a de novo review of the record in this matter and considering the parties' arguments presented on this motion, the Court finds the government has shown by clear and convincing evidence that Mr. Powell poses a danger to the community.

The Court will address the second factor first – the weight of the evidence. Making no determination as to the Defendant's innocence or guilt on the charge, the Court finds that the evidence presented by the government reveals significant evidence against Mr. Powell to support the charge. Though it is of lesser importance, the weight of the evidence is substantial in this case. *See Gvt. Brief,* Dkt. 8-10 (discussing the weight of the evidence).

Turning to Mr. Powell's history and characteristics, the Court is concerned that, among other things, he appears to be willing to destroy evidence. First, in a conversation he had with a friend relating to allegations that he had raped minor victims (including the victim identified as Jane Doe 1 in the indictment), his friend

advised him to delete pictures. *See Gvt. Ex. 5,* at 24. [2] The defendant responded by saying "If there were such things, which clearly there aren't, *they would be deleted.*" *Id.* (emphasis added).

Additionally, and in the same vein, shortly after he was arrested, Mr. Powell instructed his wife and son to "wipe" his cell phone or cloud storage. The Court does not find his explanation for this behavior – that he was simply concerned about the government accessing his financial information – persuasive.

Mr. Powell has also shown a willingness to work through others in other contexts. An example of this is shown in the May 2020 text conversation he had with Carman. (This is the same text conversation referenced above.) On May 11, 2021, MV1[3] reached out to Carman via text, saying things like: "I know u know and u should help" and "I have messages that involve u. Btw. Message me if u want to be on the good side of all this." *Gvt. Ex. 5*, at 17. Carman screenshotted that message thread and forwarded it to Powell, saying , "Uh….sounds like she's up to something." *Id.* Powell immediately wrote back, saying:

---

[2] Exhibit 5 (as well as additional supplemental exhibits and briefing) were provided to the Court, at its request, after the hearing on Friday, March 11, 2022.

[3] The defense points out that MV1 is not the victim in this case and that she does not reside in the same state as Mr. Powell. *See Mar. 12, 2022 Supp. Brief,* at 2. Nevertheless, the messages MV1 sent later included a discussion about the alleged victim in this case. *See Gvt. Ex. 5,* at 22 (MV1 asks Carman, "Are u okay knowing I was 13 and he took my virginity, and [MV3's] at 11, . . . ").

**MEMORANDUM DECISION AND ORDER - 6**

> *Convince her not to do something stupid please.*
> Let her know she can talk to me first.
> Not sure what she's up to.
> Without saying anything incriminating.

*Id.* at 18 (emphasis added). Carman then let Powell know that he had messaged MV1, and he indicated a willingness to keep Powell informed. *See id* at 19. ("I messaged her. We'll see. I just wanted you to have advance notice if something is off.").

In a nutshell, the evidence before the Court shows that despite the evidence brought forward by the defense attesting to the positive attributes of Mr. Powell's history and characteristics: (1) he has been able to recruit others to help him respond to the allegations in this case; (2) he has shown a willingness to destroy evidence; and (3) there is a very good chance that he will attempt to contact and harass victims or tamper with evidence if released. Indeed, as recently as July 2020, Mr. Powell contacted the alleged victim in this case, in an apparent attempt to convince her to retract her allegations. *See Gvt. Ex. 6*, at 2. On that date, Powell told her that he had an attorney for her and that it didn't matter what she had said or done – the attorney could "undo it." *Id.*

As for the nature and circumstances of the offense, this is a serious case, involving alleged multiple counts of sexual exploitation and attempted sexual exploitation of a minor (the defendant's step-daughter), as well as receipt of child pornography. The fact that Powell's alleged crime involves a minor victim is

MEMORANDUM DECISION AND ORDER - 7

something of which the detention statute instructs the court to take notice.

The nature and seriousness of the dangers posed included sexual exploitation of minors – including physical harm to a child. Additionally, before any charges were brought, in the context of texting Carman, Powell said that one of the alleged victims was "saying come crazy shit that could never be true." *Gvt. Ex. 5,* at 20. Carman responded by sending him a screenshot of a text conversation he had had with MV1. In that forwarded screenshot, MV1 accused Powell of raping her when she was 13 and raping MV3 when she was 11. MV 1 then asked Carman to call her, saying "Give me ur number and we can talk about this before I blow my brains all over the yard of trents house. I'll show u the messages I have of Trent telling me I can talk to u  . . . . I need you to help me because Trent has hurt me and I am suicidal." *Id.* at 22-23.

In the context of forwarding that screenshotted message to Powell, Carman advised Powell to "ignore it unless there is some credible proof.  Anything said may dig a deeper hole. … Or get a mop and a bag and get ready to clean up some brains or lack thereof." *Id*.  Mr. Powell responded, saying, "The mop would be the best result . . . Unfortunately." *Id.*.

The government views that final comment – about a mop being the best result – as a veiled threat to a witness the Government expects to testify at trial. The defense disagrees, stating: "Even looking at this conversation in a light most

favorable to the government, the worst that can be said is that Mr. Powell indicated some agreement to a stupid comment made by Mr. Carmen about getting a "mop" to "clean up some brains." *Motion,* Dkt. 33, at 10; *see also Defendants' Supp. Br.*, at 3.

The Court finds this entire text thread concerning – including Mr. Powell's comment indicating that the best result would be if the victim were no longer around. Ultimately, even with the additional context provided during the March 11, 2022 hearing (and in the supplemental, post-hearing briefing), the Court agrees with the Magistrate Judge's finding that Powell's statement regarding the "mop" being the "best result" to be very concerning. *Hearing Tr.,* Dkt. 33-2, at 20:4-8.

For all of the above reasons, the Court finds Mr. Powell presents a danger to the public. The Court also finds there are no condition or combination of conditions that will reasonably assure the safety of any other person in the community. *See* 18 U.S.C. § 3142(e). The Court has given serious consideration to the possible release conditions proposed in this case. Mr. Powell proposed the following:

(1) a no-contact order with "any victims or potential victims:"

(2) a prohibition against unsupervised contact with any persons under the age of 18;

(3) no minors will be allowed in the home;

(4) computer monitoring and no use of a computer "other than what is

MEMORANDUM DECISION AND ORDER - 9

  approved for employment purposes;"

(5) electronic monitoring;

(6) home confinement – leaving only for work, and his family has agreed to drive him to and from work.

*Motion,* Dkt. 33, at 12. Additionally, Mr. Powell says that his mother would agree to act as a "third party custodian" if the Court deemed it appropriate. *Id.*

  Even taking these proposed restrictions into account, the Court finds that the government has shown, by clear and convincing evidence, that Mr. Powell would pose a danger to the alleged victim in this case and to the community at large – minors in particular. In addition to the physical danger the alleged victim or other minors might face, Mr. Powell may well attempt to harass or silence minor victims. This risk is underscored not only by text thread including the comments about "mopping up brains," but also by the fact that Mr. Powell proposes to live with his wife and son – the same individuals who acted upon his instructions to wipe a cell phone. The U.S. Probation officer voiced this concern in the pretrial services report, noting that "Should the defendant be released, his wife and son present a risk of assisting the defendant in additional criminal conduct or noncompliance with orders of the court." *Nov. 1, 2021 Pretrial Services Report, Ex. 3 to Gvt. Response,* Dkt. 36-3, at 12.

  More broadly, the U.S. Pretrial Services Report recommends that Mr. Powell be detained. The Probation Officer concluded that "The defendant appears

to be an extreme risk of danger to the community. There is no condition or combination of conditions to reasonably assure the safety of the community." *Id.* The Court agrees. For example, although Mr. Powell says he would agree to conditions preventing him using a computer, probation could not prevent him from accessing another computer or cell phone to contact a minor. Plus, given his track record of working through others, there are not sufficient assurances that the probation officers would be able to appropriately and effectively supervise him.

Because the Court is not reasonably assured that other people or the community will be safe if Mr. Powell is released even with the combination of proposed conditions imposed, the Court will deny the Defendant's motion and affirm the Magistrate Judge's detention order.

## ORDER

**IT IS ORDERED that** Defendant's Motion to Revoke Detention Order (Dkt. 33) is **DENIED**. The Magistrate Judge's Detention Order is **AFFIRMED.**

DATED: March 14, 2022

B. Lynn Winmill
United States District Judge

MEMORANDUM DECISION AND ORDER - 11