UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>TRENTON JARED POWELL,<br><br>Defendant. | Case No. 4:21-cr-00290-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Trenton Jared Powell's Sealed Motion for

Disclosure of Any Notes and/or Other Records of Psychiatric or Psychological Treatment

of Prosecution Witness Minor 1 (Dkt. 84). Powell moves the Court for an Order "to turn

over any notes, memoranda and any and all records of any psychiatric treatment,

psychological treatment, and or counseling sessions of the prosecution witnesses

identified as A.R, and referred to in other pleadings as Minor 1, for the purposes of an *in*

**MEMORANDUM DECISION AND ORDER - 1**

*camera* review and subsequent disclosure of any exculpatory or relevant information to the defense." *See Motion*, p. 1, Dkt. 84.

**BACKGROUND**

Powell was indicted in this case on October 26, 2021. The Indictment charges him with six counts of Sexual Exploitation of a Minor, two counts of Attempted Sexual Exploitation of a Minor, and three counts of Receipt of Child Pornography. All counts involve a single minor victim, Jane Doe 1, and the photographs forming the basis of the charges were allegedly taken between October 9, 2010, and June 20, 2012. Trial will begin on April 25, 2023.

On January 13, 2023, the Court issued a Sealed Memorandum Decision and Order, overruling in part and sustaining in part Powell's objection to the government's Notice of Intent to Introduce Other-Act Evidence under Federal Rule of Civil Procedure 404(b) and 414. *See* Dkt. 76. In that decision, the Court ruled that Minor 1, who is not the minor victim charged in the Indictment, likely would be allowed to testify that Powell sexually abused her beginning around 2009, when she was 13, and ending in 2014, when she was 18. *Id.* at 9-12, 15 The Court found that Minor 1's testimony regarding abuse that occurred before she turned 14 was admissible under Rule 414, and her testimony regarding abuse that occurred after she turned 14 would be admissible pursuant to Rule 404(b).

**MEMORANDUM DECISION AND ORDER - 2**

The Court further found that both the Rule 414 and Rule 404(b) testimony survived a Rule 403 balancing at the preliminary stage. *Id.* at 15, 22. First, it appeared "even outside the context of Rule 404(b)," Minor 1 "reported that Powell showed her videos and photographs featuring Jane Doe 1," and so she may testify regardless. *Id.* at 16. Second, the Court observed that "Powell's alleged abuse of Jane Doe 1 is, in many respects almost identical to his alleged abuse of Minor 1," and for this reason the Court found that her anticipated testimony would be "exceptionally probative." *Id.* Nonetheless, the Court stated it would "reassess and confirm [its] preliminary determination that Minor 1's testimony survives a Rule 403 balancing" after having heard the other evidence presented at trial – although, with respect to the Rule 414 propensity evidence, the Court observed that "it is hard to imagine how testimony of Powell's alleged abuse of Minor 1….would not be 'helpful' or 'practically necessary' to the government's ability to contextualize the charged conduct." *Id.* at 22.

Nearly three months after the Court issued this decision ruling, Powell filed this motion seeking an *in camera* review of Minor 1's psychiatric records. According to Powell, he believes that Minor 1 has a "long history of psychological and psychiatric illnesses" and has received treatment for these illnesses. He states that Minor 1 received treatment as an inpatient as State Hospital South in Blackfoot, Idaho on at least one occasion from approximately 2009 to 2010 – around the same time frame during which Minor 1 says Powell began sexually abusing her. Powell maintains that the records from

**MEMORANDUM DECISION AND ORDER - 3**

Minor 1's state hospital stay, in addition to "any other psychiatric/psychological or therapy records, may provide exculpatory evidence to the defendant, or evidence that is essential to a full and complete cross examination of this witness." *Motion*, p. 2, Dkt. 84.

Powell believes that Minor 1's treatment records may contain exculpatory or impeachment evidence because "[i]t is known to the parties that witness Minor 1 underwent psychological treatment at the time she is now alleging to have had a sexual relationship with Mr. Powell," and "[i]t is known from text messages that Minor 1 had expressed suicidal thoughts at the time these events took place, and at the time of reporting." *Reply*, p. 2, Dkt. 95. Powell further states that "[i]t is also known through text records that Minor 1 was extremely jealous of the defendant and ultimately angry that he married her sister." *Id.* As Powell believes that the records may contain exculpatory or impeachment evidence, he requests that "this Court conduct an *in camera* review of Minor 1's mental health records to determine if said records should be disclosed to the defendant in order to preserve his Fourteenth Amendment right to due process."

Specifically, Powell argues that "due process requires that the Court make an inquiry as to the identity of all mental health professionals who have examined and/or treated Minor 1 and require that the prosecution disclose the identity of said mental health professionals including, but not limited to State Hospital South." *Opening Br.*, p. 5, Dkt. 84. "Further," Powell urges, "the Court should order the disclosure of any notes, memoranda and/or recordation of any treatment sessions, counseling sessions and

MEMORANDUM DECISION AND ORDER - 4

communications between the prosecution witness any mental health professionals at State Hospital South, in addition to any other records that may be known or become known to the Government." *Id.* Powell says the Court "should then conduct an *in camera* inspection and disclose to the defense any favorable, exculpatory and material evidence, and seal the aforementioned documentation in the court file for any possible appellate review." *Id.*

The government does not currently possess Minor 1's private and confidential mental health records. In addition, it is currently unknown whether the state hospital has retained any records pertaining to Minor 1's alleged stay there in 2009 through 2010. Likewise, it is unknown whether any other psychiatric/psychological or therapy records relating to Minor 1 exist.

## ANALYSIS

### 1. Due Process

The Due Process Clause requires that the government disclose to the defendant any evidence "in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citing *United States v. Agurs*, 427 U.S. 97 (1976) and *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The prosecution's disclosure obligations first outlined in *Brady* extends to both exculpatory and impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 153-154 (1972). And a prosecutor has a duty to learn of and

disclose any "favorable evidence known to others acting on the government's behalf in the case, including the police." *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995); *United States v. Zuno–Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995).

In *Kyles*, the Supreme Court held prosecutors committed a *Brady* violation when they failed to disclose police records of eyewitness statements, statements by the informant who linked the defendant to the crime and provided most of the State's evidence, and other exculpatory evidence. In reaching this conclusion, the Court held that the prosecutor was in a position to "know what is undisclosed" by any governmental investigatory agency. 514 U.S. at 437. In addition to the police, government agencies covered by this duty have been held to include any investigatory agencies that have engaged in a "joint investigation" with the prosecution, such that they can be fairly considered to be part of the prosecution team. *See United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir.) ("The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."), *cert. denied*, 493 U.S. 858 (1989).

But "[t]he prosecution is under no obligation to turn over materials not under its control." *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (citing *United States v. Gatto*, 763 F.2d 1040, 1049 (9th Cir. 1985)); *see also United States v. Zavala*, 839 F.2d 523, 528 (9th Cir. 1988). Nor is the government "required to search out exculpatory evidence for the defendant," *United States v. Kraemer*, 810 F.2d 173, 178 (8th Cir. 1987),

or "to obtain evidence from third parties," *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001) (citation omitted). *See also United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991) (It is "well settled" that due process places no "affirmative duty upon the government to take action to discover information which it does not possess," or to which it does not have access.).

The Ninth Circuit's decision in *United States v. Zavala* make this clear. 839 F.2d at 528. In *Zavala*, the defendant challenged his convictions on the grounds that "the court failed to order the government to produce the statements of various government witnesses in their probation reports." *Id.* at 528. The Ninth Circuit rejected this argument, finding disclosure of the reports was not compelled by *Brady*, the Jencks Act, 18 U.S.C. § 3500, or Federal Rule of Criminal Procedure 16 because the defendant conceded "the reports [were] in the hands of the court or the probation office" and therefore not subject to prosecutorial control. *Id.* (citing *United States v. Trevino*, 556 F.2d 1265, 1270 (5th Cir. 1977)). Because the defendant conceded that the reports were outside the prosecution's custody and control, the Ninth Circuit concluded that "none of the theories mentioned above [was] of any help to him." *Id.*

Here, the government does not currently have the records Powell seeks in its possession or control. Neither the State Hospital South nor any other of Minor 1's treatment providers is acting on the government's behalf; nor are they part of the prosecution team or participating in a joint investigation. *See Kyle*, 14 U.S. at 437.

MEMORANDUM DECISION AND ORDER - 7

Indeed, there is nothing to suggest that the state hospital or any third-party provider has had any involvement in the government's investigation in this case. Furthermore, the government does not have "ready access" to these records, as disclosing those health records requires a court order or patient consent.[1] As the government does not "possess" the information that Powell seeks, it has no duty to disclose such information under *Brady*, *Giglio*, or Federal Rule of Criminal Procedure 16. *Zavala*, 839 F.2d at 528; *see also United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 824 (9th Cir. 1985) ("While the prosecution must disclose any information within the possession or control of law enforcement personnel, it has no duty to volunteer information that it does not possess or of which it is unaware.") (internal citations omitted).

## 2. Psychotherapist-Patient Privilege

The Court declines to order the government to seek out and obtain Minor 1's psychotherapy records for the additional reason that such records are protected by the psychotherapist-patient privilege and therefore not subject to compelled disclosure absent Minor 1's waiver or consent.

---

[1] Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), a healthcare provider generally cannot use or disclose a patient's health care information without the patient's authorization, See 45 C.F.R. § 164.508(a)(1), or without a valid court order, 5 C.F.R. § 164.512(e) (i). In addition, a health provider may disclose heath care information in response to a subpoena or discovery request to be used in a judicial proceeding "provided that the covered entity discloses only the protected health information expressly authorized by such order; or in response to a subpoena or other discovery request if the health care provider receives "satisfactory assurance ... from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request" or "that reasonable efforts have been made by such party to secure a qualified protective order." 45 C.F.R. § 164.512(e).

MEMORANDUM DECISION AND ORDER - 8

In *Jaffee v. Redmond*, 518 U.S. 1 (1996), the Supreme Court created a federal psychotherapist-patient privilege that covers confidential communications made to licensed psychiatrists, psychologists, and social workers. *Id.* at 15-16. The Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 15. In so holding, the Supreme Court equated the psychotherapist-patient privilege to the spousal and attorney-client privileges, observing that, "[l]ike the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'" *Id.* at 10. The Court further explained that effective psychotherapy depended on an atmosphere of trust and confidence, and often included sensitive communications that might cause embarrassment or disgrace if disclosed. *Id.* "For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.* The Court therefore concurred with "the judgment of the state legislatures and the Advisory Committee that a psychotherapist-patient privilege will serve a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.*

The Court in *Jaffee* also expressly rejected the use of a balancing test to weight the psychotherapist-patient privilege against other interests: "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance

**MEMORANDUM DECISION AND ORDER - 9**

of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* at 17. The Court opined that an uncertain privilege that "results in widely varying applications by the courts ... is little better than no privilege at all." *Id.* (citation omitted).

*Jaffee*, however, did not discuss how to apply the psychotherapist-privilege in a criminal context when a criminal defendant's constitutional rights are implicated. Without this explicit guidance, some courts have applied a balancing test and found that a criminal defendant's constitutional rights trump the privilege – despite *Jaffe's* emphatic language exalting the "mental health of our citizenry" as "a public good of transcendent importance," and its rejection of the use of a balancing test. *See, e.g., Bassine v. Hill*, 450 F.Supp.2d 1182, 1185–86 (D. Or. 2006) (distinguishing *Jaffee* as a civil case, and holding that the habeas petitioner's rights of confrontation, cross-examination, and due process outweighed the psychotherapist-patient privilege); *United States v. Alperin*, 128 F.Supp.2d 1251, 1253 (N.D.Cal.2001) (finding, under California law, "a criminal defendant's Sixth Amendment rights to a fair trial and to confront witnesses" outweighed the complaining witness's interest in maintaining confidentiality of her mental health records); *United States v. Hansen*, 955 F.Supp. 1225, 1226 (D.Mont. 1997) (finding that the defendant's need for the privileged material outweighed the interests of the deceased victim and the public in preventing disclosure).

MEMORANDUM DECISION AND ORDER - 10

In *Mazzola*, on which Powell relies here, the court distinguished *Jaffee*, a "civil proceeding," from the case before it – a criminal prosecution. *Mazzola*, 217 F.R.D. at 88. The court then acknowledged "the societal interest in guarding the confidentiality of communications between a therapist and his or her client is significant" but, with minimal analysis, found it did "not outweigh the need for effective cross examination of this key government witness at the criminal trial." *Id.* Notably, *Mazzola* is distinguishable from this case in that the prosecution already possessed the records the defendant sought.

Powell also cites *United States v. Alperin* to support his right to Minor 1's psychotherapy records. In *Alperin*, the prosecution disclosed to the defendant, who was charged with assaulting a United States Customs Inspector, a letter from the Inspector's psychiatrist stating that he had treated the Inspector for depression and the Inspector had suffered "a marked worsening in her depression" since the alleged assault by the defendant. 128 F. Supp. 2d at 1255. After receiving the letter, the defendant sought to subpoena the Inspector's psychiatric records. Although the Inspector disclosed this letter from her psychiatrist, she asserted her psychotherapist-patient privilege not to disclose her psychiatric records, and the government moved to quash the subpoena. *Id.* at 1252. Relying, in part, on the law in California, where "courts are expected to balance a criminal defendant's Sixth Amendment rights to a fair trial and to confront witnesses against the patient's interest in maintaining confidentiality," *id.* at 1253, the court

concluded that the defendant's confrontation rights afforded him access to the complaining witness' psychiatric records to support his claim of self-defense, *id.* at 1254.

A number of federal courts, however, have reached the opposite conclusion, finding no such "constitutional exception" to the privilege. In *Kinder v. White*, 609 Fed. Appx. 126, 128 (4th Cir. 2015) (unpub.), the lower court determined that the psychotherapist-patient privilege included an exception where necessary to vindicate a criminal defendant's constitutional rights, especially when the records involved the "star witness" for the prosecution. Rejecting this conclusion, the Fourth Circuit held that the district court's conclusion was "demonstrably at odds" with *Jaffe* and the basic principles underpinning testimonial privileges. *Id.* at 130. Further explaining, the Fourth Circuit in *Kinder* held that when the Supreme Court recognizes a privilege, "it necessarily has already determined that the privilege in question 'promotes sufficiently important interests to outweigh the need for probative evidence.'" *Id.* at 131 (citing *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990)).

Similarly, in *United States v. Doyle*, 1 F.Supp.2d 1187 (D. Oregon 1998), the court rejected "balancing" the defendant's constitutional rights against the victim's right to confidentiality, finding *Jaffee* expressly disavowed such an approach – even in the criminal context. In *Doyle*, the defendant argued that his Sixth Amendment right to compulsory process trumped the victim's right to confidentiality. The Government sought an upward sentencing departure due to the victim's extreme psychological injury,

**MEMORANDUM DECISION AND ORDER - 12**

and the defendant argued that her psychotherapy records could perhaps dispel her testimony. The court disagreed. It noted *Jaffee's* rationale, that the psychotherapist-patient privilege was "[l]ike the spousal and attorney-client privileges," before observing that under defendant's theory, "[l]awyers, spouses, even priests, presumably, could be ordered to cough up their notes or memories about the most private and confidential communications." Relying on *Jaffee's* express rejection of a balancing test, the court in *Doyle* refused to conduct an *in-camera* examination of the records, finding that such a review would itself violate the privilege. *Id.* at 1191.

Numerous other courts have reached similar results. S*ee, e.g., Johnson v. Norris*, 537 F.3d 840, 845–47 (8th Cir.2008) (rejecting an argument made by a state habeas petitioner that his rights under the Confrontation Clause were violated when the trial court denied him access to the psychiatric records of a witness; and also rejecting an argument that production of psychotherapy records not in the government's possession was required under *Brady*); *Newton v. Kemna*, 354 F.3d 776, 779–82 (8th Cir.2004) (declining to apply a "balancing" approach to the psychotherapist-patient privilege in finding district court did not abuse its discretion in denying defendant's motion to discover the psychiatric records of prosecution's only eye witness); *United States v. Meintzschel*, 538 F. Supp. 3d 571, 582 (E.D.N.C. 2021) (defendant failed to demonstrate any applicable exception or waiver to psychotherapist-patient privilege in prosecution for enticement of a minor, sexual abuse of a minor, and abusive sexual contact with a child);

MEMORANDUM DECISION AND ORDER - 13

*United States v. Shrader*, 716 F. Supp. 2d 464, 472 (S.D.W. Va. 2010) (finding "psychotherapist-patient privilege is not subordinate to the Sixth Amendment rights of the defendant"); *Petersen v. United States*, 352 F.Supp.2d 1016, 1023–24 (D.S.D. 2005) (rejecting an argument that the psychotherapist-patient privilege is secondary to a defendant's rights); U*nited States v. Haworth*, 168 F.R.D. 660, 660–62 (D.N.M.1996) (concluding that the psychotherapy records were privileged after in camera review and not subject to discovery, and stating that the defendants "mistakenly equate their confrontation rights with a right to discover information that is clearly privileged.").

The Court finds the reasoning in this latter line of cases more persuasive. As the court explained in *United States v. Shrader*, "the emphatic language used by the Jaffee court regarding the fallacy of a balancing test demonstrates that the court intended for the privilege to apply in all circumstances, civil and criminal." *United States v. Shrader*, 716 F. Supp. 2d 464, 472 (S.D.W. Va. 2010). To find exceptions to the privilege, even in the criminal context, indeed, "would eviscerate the effectiveness of the privilege." *Jaffee*, 518 U.S. at 17.

It is also worth noting, as the court did in *Doyle*, that no "constitutional exception" exists with respect to the attorney-client or spousal privileges. As the court observed in *Shrader*, "[a]ny court would make short work of an argument that the attorney-client privilege can be overcome by a criminal defendant's cross-examination needs." *Shrader*, 716 F. Supp. 2d at 473; *See also United States v. Rainone*, 32 F.3d 1203, 1207 (7th Cir.

1994) ("A trial judge does not violate the Constitution when he limits the scope of cross-examination for a good reason, and here as in the usual case desire to protect the attorney-client privilege was a good reason."). And the Supreme Court never indicated in *Jaffee* or any other case that it considers psychotherapist-patient privilege to be "less worthy" than any other recognized privilege. To the contrary, as noted above, the Supreme Court in *Jaffee* explicitly equated the psychotherapist-patient privilege to both the attorney-client privilege and the spousal privilege. *Jaffee*, 518 U.S. at 10 ("Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'").

The circumstances of this case further underscore the importance of maintaining the psychotherapist privilege in the face of a criminal defendant's desire for potential impeachment evidence. According to Powell, Minor 1 was admitted to the state hospital around the time she alleges that Powell began sexually abusing her. Although Powell suggests this fact indicates her psychotherapy records might contain impeachment evidence, this fact could equally suggest that Minor 1 sought mental health treatment precisely *because* Powell had started abusing her. If the latter is the case, sexual abuse victims would have to choose whether to obtain counseling knowing that their alleged abusers can subpoena those records in a later criminal case, which "would be no choice at all." *Shrader*, 716 F. Supp. 2d at 473.

**MEMORANDUM DECISION AND ORDER - 15**

Powell insists, however, that requesting the Court to conduct an *in camera* review of Minor 1's privileged mental health records in order "to preserve Mr. Powell's right to due process under the Fourteenth Amendment is well established and appropriate." *Def's Reply*, p. 2, Dkt. 95 (relying, in part, on *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)). But even if the Court's *in camera* review of the privileged records would not violate Minor 1's privilege, the Court's *disclosure* of any records to the Defendant would necessarily require the Court to balance Powell's interest in obtaining potential impeachment evidence against Minor 1's interest in seeking mental health treatment – "a public good of transcendent importance." *Jaffee*, 518 U.S. at 2. As explained above, the Court declines to engage in such a balancing as expressly rejected by the Supreme Court in *Jaffee*. In addition, also as explained above, Powell's argument that due process requires the Court to conduct an *in camera review* "puts the cart before the horse" in that "the government itself must possess or have access to the materials" for *Brady* to apply. *Meintzschel*, 538 F. Supp. 3d at 580 (rejecting defendant's argument that *Ritchie* entitled him at least to have the court conduct an *in camera* review of the requested materials).

In sum, for the reasons articulated above, the Court will deny Powell's request that the Court order the government to obtain Minor 1's privileged psychotherapy records.

**ORDER**

**IT IS ORDERED that** Defendant Trenton Jared Powell's Sealed Motion for

Disclosure of Any Notes and/or Other Records of Psychiatric or Psychological Treatment

of Prosecution Witness Minor 1 (Dkt. 84) is **DENIED.**

DATED: April 27, 2023

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 17**