UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRENTON JARED POWELL,<br><br>Defendant. | Case No. 4:21-cr-00290-BLW<br><br>**SUPPLEMENTAL MEMORANDUM AND FINDINGS OF FACTS AND CONCLUSIONS OF LAW RE PRELIMINARY ORDER OF FORFEITURE** |

## INTRODUCTION

In a separate order, issued concurrently with this memorandum, the Court has granted the government's Motion for a Preliminary Order of Forfeiture. This memorandum explains the Court's reasons for overruling Defendant Trenton Powell's objection to the forfeiture of his home, located on City Creek Road in Pocatello, Idaho. It also serves as the Court's findings of facts and conclusions of law regarding forfeiture of the home.

## PROCEDURAL BACKGROUND

In May 2023, a jury convicted Powell of all eleven counts in the indictment, which charged him with producing, attempting to produce, and receiving child pornography, in violation of 18 U.S.C. §§ 2251(a) and § 2252A. In October 2023, Mr. Powell was sentenced to 40 years' incarceration followed by a 15-year term of

supervised release. The Court also imposed a $50,000 fine. *See* Dkt. 154.

Shortly before Mr. Powell's sentencing hearing in October 2023, the Court granted the government's motion for a preliminary order of forfeiture. *See* Dkt. 150. At the same time, the Court issued a supplemental memorandum, explaining why it was not persuaded by Powell's arguments. *See* Dkt. 151. When the Court issued the forfeiture order and memorandum, it was under the impression that neither party had requested an evidentiary hearing. *See* Dkt. 151, at 1 ("Neither party has requested a hearing on forfeiture, . . . ."). During the sentencing hearing, however, the Court was informed that Mr. Powell had orally requested an evidentiary hearing regarding the forfeiture of his home. Rather than continuing the sentencing hearing, the Court decided to: (1) vacate the previously entered preliminary order of forfeiture; (2) press ahead with the sentencing, and (3) conduct an evidentiary forfeiture hearing at a later date. Both sides agreed with this approach. After several agreed-upon continuances, the Court conducted the evidentiary hearing in September 2024,[1] and the parties submitted supplemental briefs after the hearing. *See* Dkts. 192, 193. Having considered the additional evidence and argument offered by the parties, the Court concludes that its original

---

[1] The Court conducted a restitution hearing in this matter on the same date. The Court is issuing a separate decision regarding the government's request for restitution. Additionally, the Court will prepare and enter an amended judgment relating to the forfeiture and restitution orders.

SUPPLEMENTAL MEMORANDUM & FINDINGS OF FACT AND CONCLUSIONS OF LAW - 2

assessment of the forfeiture issue was correct. Accordingly, the Court will once again issue a Preliminary Order of Forfeiture. This Order will be virtually identical to the one issued previously. The Court contemplated simply re-issuing its previously entered supplemental memorandum alongside the forfeiture order. But because Powell raised new issues after sentencing, the Court is issuing this revised supplemental memorandum, which resolves the new arguments and then restates the Court's resolution of the arguments raised earlier.

## FACTUAL BACKGROUND

As noted, a jury convicted Powell of all eleven counts charged in the indictment, which charged him with producing, attempting to produce, and receiving child pornography, in violation of 18 U.S.C. §§ 2251(a) and § 2252A. All counts involved a single minor victim, M.P., and the eight photographs forming the basis of the charges were taken between October 9, 2010 and June 20, 2012. At trial, the government proved that Powell created, or solicited the creation of, numerous images and depictions of child pornography. Notably, however, of the eight images that formed the basis of the charges, not all were taken at the home. As discussed below, however, the Court finds that three of the charged photographs were taken at the home.

Aside from that, there was ample evidence offered at trial demonstrating that Powell began sexually abusing M.P. when she was around 11 or 12 years old; the

abuse was ongoing and frequent; it included vaginal penetration and oral sex; and it continued until shortly before M.P.'s 18th birthday. Evidence also demonstrated that Powell often abused M.P. at the City Creek property, and that he took photographs of sexual acts. *See, e.g., Trial Tr.*, Dkt. 166, at 81-82, 91-93, 96-97.

## GOVERNING LEGAL STANDARDS

Federal Rule of Criminal Procedure 32.2 outlines the procedures governing criminal forfeiture. "As soon as practical after a verdict or finding of guilty . . . on any count in an indictment … regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(b)(1)(A). "If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." *Id.* "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture . . . directing the forfeiture of specific property . . . ." Fed. R. Crim. P. 32.2(b)(2)(A). "The Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing." Fed R. Crim P. 32.2(b)(4)(A) (emphasis added). The forfeiture order also must be included in the judgment, though a failure to do so may be corrected at any time under Rule 36. Fed. R. Crim. P. 32.2(b)(4)(B).

The Court's forfeiture "determination may be based on evidence already in the record ... and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). If forfeiture is contested, the court must conduct a hearing after a guilty verdict if either party requests it. *Id.* Since forfeiture is part of sentencing, relevant and reliable hearsay can be considered. *See* Fed. R. Crim. P. 32.2(b)(1)(B); U.S.S.G. § 6A1.3(a); *United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993). Still, though, the government is required to prove all necessary elements of the forfeiture by a preponderance of the evidence. *See, e.g., United States v. Mancuso,* 718 F.3d 780, 799 (9th Cir. 2013).

## DISCUSSION

### A. The Single-Photograph Argument

The Court will begin by addressing an argument Powell raised for the first time after his sentencing. He now contends that the government failed to establish a substantial connection between his home and the offenses of conviction because, according to his view of the evidence, just one of the eight charged photographs (Exhibit 1047, forming the basis for Count 8) was definitively established as having been taken at the home. *See Supp. Br.,* Dkt. 193, at 3 (arguing that "[t]he only photo M.P. positively identified as having been taken at the City Creek residence was Exhibit 1047"); *see also Trial Tr.,* Dkt. 166, at 119-20 (M.P. testifies

that defendant took the photograph depicted in Exhibit 1047).[2] Powell argues that "[i]n order to take someone's home there must be more of a connection to the offense than just one photograph." *Id.* at 5.

The Court is not persuaded for several reasons. First, the fact that Powell took that single photograph in the privacy of his home is a sufficient connection between the home and a crime to justify forfeiture of the home. The forfeiture statute applicable to this particular offense, 18 U.S.C. § 2253(a)(3), states that if a person is convicted of various different offenses, including the offense of conviction here, that person shall "shall forfeit to the United States … [their] interest in . . . any property, real or personal, used . . . to commit or to promote the commission of such offense . . . ." 18 U.S.C. § 2253(a)(3). The Ninth Circuit has not directly held that a home where a child pornography offense is committed qualifies as a property used to commit, or promote the commission of, the offense within the meaning of 18 U.S.C. § 2253(a)(3). But other courts have. In *United States v. Hull*, 606 F.3d 524, 527-28 (8th Cir. 2010), for example, the Eighth

---

[2] The eight photographs that were the subject of the convictions were entered at trial as Government Exhibits 1043, 1047, 1048, 1049, 1050, 1051, 1052, and 1053. Trial Exhibit 1047 formed the basis of Count 8, which charged Powell with attempted sexual exploitation of a minor child. *See Indictment,* Dkt. 1; *see also Final Jury Instructions*, Dkt. 128 (Instruction 20 states: "Count 8 charges Mr. Powell with attempting to commit the offense [of attempted sexual exploitation of a minor child] in connection with his alleged production of the visual depiction show in Government Exhibit 1047.").

Circuit upheld the forfeiture of the defendant's home—including 19 acres of surrounding property as well as a barn located on the property—because Hull used a computer located in the home to solicit sex from children and distribute child pornography. The court reasoned that the "[u]se of a computer in the privacy of a residence, rather than in library, coffee shop, or senior center, made it easier for Hull to conceal his crimes from public scrutiny." *Id.* at 528. Other courts have issued similar rulings. *See generally*, Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 26-3, at 1144 & n.28 (3d ed. 2022) (citing numerous cases). The Court finds these decisions persuasive. Powell took advantage of the privacy of his home to commit the child sex offense at issue. In that sense, he "used" the City Creek Property "to commit" or "to promote the commission of" the offense within the meaning of 18 U.S.C. § 2253(a)(3). At a minimum, then, forfeiture of the home is mandatory given Powell's conviction on Count 8. Just because Powell committed other crimes—which involved photographs taken elsewhere—does not mean the home shouldn't be forfeited.

    The second reason the Court finds the "single-photograph" argument unpersuasive is factual. At least two additional photographs—those depicted in Trial Exhibits 1052 and 1053—were taken at the City Creek home. (Exhibit 1052 is associated with Count 2; Exhibit 1053 is associated with Count 1.) Based on the evidence presented at trial, and consistent with the jury's guilty verdicts on Counts

1 and 2, the Court finds that: (1) the photos shown in Exhibits 1052 and 1053 depict M.P. giving oral sex to Powell; and (2) the photographs were taken at the City Creek home. At trial, M.P. testified that both photos depict her performing oral sex on the defendant and that the acts occurred at the City Creek home, in Defendant's bedroom. *See, e.g., Trial Tr.*, Dkt. 166, at 92:16-19 (testifying that the abuse changed to include oral sex when Powell moved into the City Creek home); *id.* at 124:22 to 126:8 (testifying that the photographs shown in Exhibits 1052 and 1053 depict her giving oral sex to Powell); *id.* 194:3-19 (testifying that the photos involving oral sex were taken in Powell's master bedroom). The Court is not persuaded by Powell's argument that it is impossible to determine where these photos were taken because M.P. also had oral sex with her former boyfriend.

The third reason the Court is not persuaded by the single-photograph argument is more general. At the core of each crime of conviction is the fact that Mr. Powell had an inappropriate sexual relationship with his step-daughter, M.P. He was convicted of six counts of sexual exploitation of child in violation of 18 U.S.C. § 2251(a) and (e), and two counts of attempted sexual exploitation of child also in violation of 18 U.S.C. § 2251(a) and (e). The elements of sexual exploitation of a child include employing, using, persuading, inducing, enticing or coercing a minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. Mr. Powell used the City Creek

home to commit, or promote the commission of, these offenses. Among other things, he insisted that M.P. visit him at the residence on a weekly basis under the guise of wanting to maintain an appropriate father-type relationship. During those visits, M.P. did not have her own bedroom or bed; rather, she was to sleep with Powell in his bedroom. M.P. also testified that Powell repeatedly abused her at the property and that he took pictures of the sexual acts. *See, e.g., Trial Tr.,* Dkt. 166, at 102-112 (M.P. testifies that Powell took several photographs of her, in various stages of undress, at the residence).

## B. The Renovation & Divisibility

Powell has also argued that because he extensively renovated his home after the crimes were committed, it has been transformed such that it is no longer intertwined with the criminal conduct, and, therefore, not forfeitable. He also argues that because of the renovation, the government has not established that he used the entire property to commit or promote the commission of the offenses. In other words, Powell is essentially arguing that a single family home is not forfeitable unless the entire home is used to commit or promote the commission of the offense. The Court is not persuaded by these arguments for several reasons.

*First*, the "relation back" doctrine codified at 21 U.S.C. § 853(c) and (n)(6) applies. This means that the forfeiture took effect immediately upon the commission of the underlying crime. *See generally* 18 U.S.C. § 2253(b); *United*

*States v. Lazarenko*, 476 F.3d 642, 647 (9th Cir. 2007) (citing 21 U.S.C. § 853(c)). There are good reasons for this doctrine. "Otherwise, a defendant could attempt to avoid criminal forfeiture by transferring his property to another party before conviction." *Lazarenko*, 476 F.3d at 647. Or, as applied here, a defendant could avoid forfeiture by remodeling an otherwise-forfeitable home after the offenses were committed.

*Second*, if defendant's arguments are carried to their logical conclusion, courts would be called upon to divvy up single family homes into different areas—some where the crime occurred and some where it didn't. Then, if 100% of the home wasn't the scene of a criminal act, defendants would presumably argue that courts should either order a partial forfeiture,[3] or decline to enter any forfeiture at all. Defendant does not cite any binding decisions that would support such an approach. And courts that have addressed the issue in the context of 18 U.S.C. § 2253(a)(3) have treated forfeitable residences as single, indivisible units. See, *Hull*, 606 F.3d at 527-28; *United States v. Davila*, No. 2-18-CR-062-JCM-NJK, 2019 WL 1571282, at *4 (D. Nev. Apr. 11, 2019), *aff'd*, 814 F. App'x 300 (9th Cir. 2020). Indeed, as noted above, in *Hull*, the court ordered the defendant's entire

---

[3] Of course, a "partial-forfeiture" argument would fail in circuits that have already rejected such arguments. *See, e.g.*, Hull, 606 F.3d at 527-28 (rejecting Hull's contention that the court should consider his residence separately from outbuildings or pastureland, instead treating the entire farm as a single unit for forfeiture purposes).

19-acre farm forfeited—including the barn and pastureland—because the home was located on the 19 acres. The court rejected Hull's contention that only the home be forfeited. 606 F.3d at 527-28.

*Third*, in somewhat analogous situations, courts have held that if an asset appreciates—even if through defendant's own skill and effort—the underlying asset remains forfeitable. *See United States v. Hawkey*, 148 F.3d 920, 928 (8th Cir. 1998) (if property is subject to forfeiture as property traceable to the offense, it is forfeitable in full, including any appreciation in value since the time the property became subject to forfeiture; the reason for the appreciation does not matter); *United States v. Yeh*, 199 F. Supp. 3d 998 (E.D. Va. 2016) (appreciation in defendant's stock portfolio forfeitable in its entirety).

For all these reasons, the Court is not persuaded by Powell's argument that his otherwise forfeitable home has been transformed into a non-forfeitable asset because of the post-offense renovations to the home and because other, innocent family members reside in the home.

Similarly, the Court is not persuaded by Powell's more general argument that forfeiture of the City Creek Property fails to further the objectives of 18 U.S.C § 2253(a)(3). Nor is the Court persuaded by his comparison of this statute to forfeiture statutes applicable to RICO and terrorism offenses. The gist of that latter argument is that the City Creek Property was not "used" to commit the offense (or

promote the commission of the offense) within the "more targeted" reach of 18 U.S.C. § 2253. *See* Dkt. 137, at 5. The Court disagrees with that argument for the reasons explained earlier. Based on a straightforward application of the statutory language, Powell "used" his home "to commit" or "promote the commission of" the offenses. Forfeiture is thus called for under 18 U.S.C. § 2253(a)(3).

## C. Third-Party Interests

At the restitution hearing, the defendant's mother offered testimony in an effort to demonstrate that she and her husband have an interest in the City Creek home. She said that in 2011, she and her husband moved into the basement of the home and began paying Powell $750 per month. After that, they constructed a large addition to the home, with defendant occupying one side of the home, and his parents occupying the other. Mrs. Powell said she did not believe M.P. had ever been on their side of the home. That said, she acknowledged that the property has never been subdivided and that the home and property remain in her son's name.

Ultimately, Mrs. Powell's testimony is irrelevant to whether the Court forfeits the defendant's interest in the home. Third party interests are determined in ancillary proceedings as set forth in 21 U.S.C. § 853(n).

## D. The Eighth Amendment

Finally, the Court will address Powell's contention that forfeiting the City Creek home violates his Eighth Amendment rights. A criminal forfeiture that is

"grossly disproportional to the gravity of the defendant's offense" will violate the Excessive Fines Clause. *United States v. Bajakajian*, , 334 (1998). As one court aptly explained, the punishment cannot be "more criminal than the crime." *See United States v. Sarbello*, 985 F.2d 716, 724 (3d Cir. 1993). Beginning with the amount of the forfeiture, during the September 2024 forfeiture hearing, Powell's counsel said that the home is worth between $800,000 and $950,000. The government estimated that Powell's equity interest in the home is somewhere between $386,000 and $736,800. *See Reply,* Dkt. 143, at 11. The government bases its estimate on a Zillow.com report, which valued the property at $736,800,[4] and the fact that a recorded deed of trust on the property secures a $350,000 loan. *Id.* The deed of trust was recorded on August 24, 2020. *Id.* The Presentence Investigation Report (PSR) estimated the value of the City Creek Property at $733,600 and indicates that the mortgage balance is unknown. *See PSR*, Dkt. 145, ¶ 293. Defendant did not object to that valuation, and declined to participate in a financial investigation or sign any forms that would have facilitated the Probation Office's investigation of his assets and liabilities. *Id.*

---

[4] The government's brief reflects the value as of September 2023. *See* Reply, Dkt. 143, at 11 n.3 The current Zillow valuation is similar—as of this writing, in June 2025, the estimated value reported on Zillow.com is $741,100. *See* https://www.zillow.com/homedetails/1003-City-Creek-Rd-Pocatello-ID-83204/113828732_zpid/ (last accessed June 5, 2025) (providing an estimated value of $741,100 and an "estimated sales range" of between $682,000 and $808,000).

Having reviewed this record, the Court finds that the value of the home is around $735,000, and that defendant has around $385,000 worth of equity in the home, and possibly up to $735,000. With those numbers in mind, which speak to the harshness of the punishment, the Court will turn to the gravity of the offense.

Courts generally consider "four factors when weighing the gravity of an offense: (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused. " *United States v. Beecroft*, 825 F.3d 991, 1000 (9th Cir. 2016) (citation and quotation omitted), *abrogated on other grounds by Honeycutt v. United States*, 581 U.S. 443 (2017).

Beginning with the first and fourth factors, Powell's crimes were extensive and grave. He sexually exploited M.P. over many years, beginning when she was around 11 or 12 years old. The damage he inflicted likely is profound. As for the second factor, at trial the government presented evidence that Powell abused another minor in addition to M.P. And the PSR refers to the fact that Powell abused many other victims. Turning to the third factor—the "other penalties that may be imposed"—the Court may consider the other penalties Congress has authorized, as well as the maximum penalties that could be imposed under the Sentencing Guidelines. *United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1059-60 (9th Cir. 2014). "[T]he maximum penalties under the Sentencing

Guidelines should be given greater weight than the statutory maximum because the Guidelines take into account the specific culpability of the offender." *Id.*

Here, Powell faced a lengthy prison sentence, as the statutory minimum term of imprisonment was 15 years and the maximum was 30 years for counts one through eight. For counts nine through eleven, the minimum was five years and the maximum was 20 years. *See* 18 U.S.C. § 2251. Each count had a maximum fine of $250,000, or two times the pecuniary loss caused to a victim, whichever was greater. *See* 18 U.S.C. § 3571(a)(3) and (d). With each count of conviction having a maximum fine associated with it of $250,000, that equals $2,750,000. The Court calculated the guideline range for defendant as effectively a life sentence (300 years) and the fine range as between $50,000 to $250,000. *See Statement of Reasons* ¶ III, Dkt. 152. The statutory penalties, the guidelines range for imprisonment, and the guidelines fine range underscore the severity and gravity of the defendant's crimes. Comparing the gravity of defendant's offenses to the forfeiture of a home valued at around $735,000 (and even assuming Powell has 100% equity), the Court finds that such a forfeiture passes constitutional muster. The amount of Powell's interest in the home is substantially less than the total statutory fines that could be ordered, and under three times the amount of the maximum guidelines fine. Granted, this is a substantial forfeiture order, and the Court does not make it lightly. But it is not grossly disproportional to the gravity of

the offense. *See, e.g., United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1060 (9th Cir. 2014) (upholding forfeiture order that fell "far below the maximum statutory fine" and was "only 2.6 times the maximum" Guidelines fine); *United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003).

    Finally, the Court is not persuaded by defendant's argument that the home should not be forfeited because of the adverse effects it will have on his innocent, elderly parents and adult son, who reside in the home. The cases cited and relied upon by defendant are distinguishable because the third parties in those cases typically had ownership interests in the properties. *See, e.g., von Hofe v. United States*, 492 F.3d 175 (2d Cir. 2007). And, more generally, while this Court is sympathetic to the effect Mr. Powell's crimes will have upon his family, that is a sad truth in almost every criminal case—the fallout from the crime often visits significant harms upon the offender's family. But, more to the point, the Court finds that the adverse effect the forfeiture will have on defendant's parents and son does not render the forfeiture unconstitutionally excessive. It bears repeating that Powell's crimes were grave and the harm inflicted profound.



DATED: June 5, 2025

B. Lynn Winmill
U.S. District Court Judge