UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRENTON JARED POWELL,<br><br>Defendant. | Case No. 4:21-cr-00290-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

This matter is before the Court on the government's request that Defendant Trenton Powell be ordered to pay $1,748,424 in restitution to M.P. At the sentencing hearing, the Court ordered restitution but deferred deciding the amount. The Court conducted an evidentiary hearing in September 2024; the parties submitted supplemental briefing thereafter; and the Court is now prepared to resolve the matter. For the reasons explained below, the Court finds that the government failed to demonstrate by a preponderance that Powell's conduct resulted in or will cause lost future income to M.P. Accordingly, because this was the only type of restitution sought, the Court will deny the request.

## BACKGROUND

In May 2023, a jury convicted Powell of all eleven counts in the indictment,

which charged him with producing, attempting to produce, and receiving child pornography, in violation of 18 U.S.C. §§ 2251(a) and § 2252A. All counts involved a single minor victim, M.P., and the photographs forming the basis of the charges were taken between October 9, 2010 and June 20, 2012. During trial, there was ample evidence proving that Powell began sexually abusing M.P. when she was 11 or 12 years of age; the abuse was ongoing and frequent; it included vaginal penetration and oral sex; and it continued until shortly before M.P.'s 18th birthday. In short, Powell robbed M.P. of her childhood and stole her innocence. *See Victim Impact Statement,* Dkt. 145-2. The challenge, however, is that the government only sought restitution for lost future income. As will be discussed, the record does not support restitution for this particular loss.

## LEGAL STANDARD

The Mandatory Restitution for Sexual Exploitation of Children Act requires a district court to order restitution for the victims of sexually exploitative crimes committed against children. *See* 18 U.S.C. § 2259. Under 18 U.S.C. § 2259(b)(1), with certain exceptions not relevant here, the restitution order must direct the defendant to pay the "full amount of the victim's losses." A "victim" is statutorily defined as "the individual harmed as a result of a commission of a crime under this chapter." § 2259(c)(4). Compensable losses include:

- medical services relating to physical, psychiatric, or psychological care;

- physical and occupational therapy or rehabilitation;

- necessary transportation, temporary housing, and child care expenses;

- lost income;

- reasonable attorneys' fees, as well as other costs incurred;

- any other relevant losses incurred by the victim.

§ 2259(b), (c)(2). The government bears the burden of proving the propriety and amount of restitution by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e). The Ninth Circuit has held that restitution is proper only for losses that were proximately caused by the defendant's conduct. *See United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999); *see also Paroline v. United States*, 572 U.S. 434, 448 (2014).  In other words, there must be a direct relationship between the loss and the offense, reflecting "the bedrock principle that restitution should reflect the consequences of the defendant's own conduct, . . . ." *Paroline*, 572 U.S. at 455.

Ultimately, the Court must make three determinations in order to award restitution under 18 U.S.C. § 2259: "(1) that the individual seeking restitution is a 'victim' of the defendant's offense; (2) that the defendant's offense was a proximate cause of the victim's losses; and (3) that the losses so caused can be

calculated with 'some reasonable certainty.'" *United States v. Kennedy*, 643 F.3d 1251, 1263 (9th Cir. 2011) (internal citations omitted). Finally, an order of restitution is issued and enforced in accordance with 18 U.S.C. § 3664. *See* 18 U.S.C. § 2259(b)(3).

## ANALYSIS

### A.    The Government Proved that M.P. is a Victim

The Court finds that M.P. is a victim of Powell's crimes within the meaning of 18 U.S.C. § 2259.[1] Powell cannot seriously contend otherwise, as he produced child pornography featuring M.P. and subjected her to ongoing sexual abuse for several years—beginning when she was around 11 or 12 years old and continuing until shortly before she turned 18.

### B.    But the Government Did Not Prove that Powell's Conduct Proximately Caused M.P.'s Claimed Losses

As noted above, restitution is proper under § 2259 "only to the extent the defendant's offense proximately caused a victim's losses." *Paroline,* 572 U.S. at 448. This proximate-cause limitation "forecloses liability in situations where the causal link between conduct and result is so attenuated that the so-called consequence is more akin to mere fortuity." *Id.* By the same token, however, the

---

[1] A "victim" is defined as "the individual harmed as a result of a commission of a crime under [Chapter 110]." 18 U.S.C. § 2259(c)(4).

Ninth Circuit has observed that although "the statutory language is circumscribed by the requirement of 'a causal connection between the offense of conviction and the victim's harm, we and other circuits addressing restitution orders under Section 2259 have not imposed a requirement of causation approaching mathematical precision." *United States v. Doe*, 488 F.3d 1154, 1159-60 (9th Cir. 2007) (citing *Laney*, 189 F.3d at 966).

Here, although the Court easily concludes that Powell harmed M.P., the government has not demonstrated that Powell's conduct proximately caused the particular harm claimed here—M.P.'s asserted lost future earnings. The government's expert, Dr. Stan Smith, calculated M.P.'s loss of future earnings at between around $1.75 million and $5.5 million. *See Report,* Dkt. 180-2, at 7. Those calculations are based on two underlying causal assumptions: (1) because of Powell's crimes, M.P. did not attend college; and (2) because of Powell's crimes, M.P. suffers from anxiety or depression to a degree that she has a disabling condition. Taking this step by step, and beginning with the emotional harm, Dr. Smith's report states:

> [M.P.] reports that she cried a lot, felt anxiety, and frustration that she couldn't escape the situation during the time period when she was being abused. After she was able to get away from her abuser, she frequently worried that he would find her. [M.P.] reports that she has trauma responses due to the incident. She states that she schedules her day full so she doesn't have to think too much. She notes that she still has anxiety and was treated by a psychologist a

couple years ago, when she was put on medication.

*Gvt. Ex. 2, Smith Report,* Dkt. 180-2, at 6-7; *see also Victim Impact Statement,*

Dkt. 145-2, at 1-2. Based on this report, Dr. Smith assumed that M.P. has a

disabling condition, which, in turn, will significantly reduce her probability of

employment for her entire working life. He explains this point here:

> For people who have disabling conditions, such as [M.P.], the
> probability of employment is significantly reduced. This
> reduction can mean fewer years worked in one's career (i.e.
> retiring early) or fewer hours worked in each year (i.e. shorter
> work week, more time off, etc). For persons with a disability
> characterized in the study as "depressed or anxious," the
> probability of employment is 28 percent, compared to the 70.3
> percent probability of employment for the total population. This
> is equal to a 39.83 percent probability of employment for
> persons with a disability characterized in the study as
> "depressed or anxious" compared to the total population. This
> employment probability impairment of 60.17 percent may be
> applied to [M.P.'s] earnings to determine the net wage loss.

*Id.* at 7 (internal citation to omitted).

As for the second causal assumption underpinning Dr. Smith's damages

calculation—related to the fact that M.P. did not attend college—the report

provides as follows:

> [M.P.] graduated from high school in 2013 with a 3.0 GPA and did
> not pursue any post-high school education or training, to which she
> attributes [to] being tired of receiving bad grades in high school as
> a result of the stress from the abuse. [M.P.] states that her grades
> began to slip and she failed a couple of classes after the abuse
> started. She states that her abuser would frequently text her during
> school, which led to her skipping classes. She states that instead of

pursuing college, she worked after high school.

*Smith Report,* Dkt. 180-2, at 4; *see also id*. at 3-4 (noting that M.P.'s career goal had been to become a pharmacist, and that "she feels strongly that she would have pursued it had she not been abused"). With these assumptions in place, Dr. Smith calculated three different scenarios related to lost future earnings: Scenario 1 (assuming some college but no degree) calculates the loss at $1,748,424; Scenario 2 (assuming a bachelor's degree) calculates the loss at $3,275,293; and Scenario 3 (assuming a pharmacy degree), calculates the loss at $5,502,461. *Id.* at 7. All loss scenarios calculate the losses for M.P.'s entire adult working life (through age 67).

Powell does not quibble with Dr. Smith's mathematical calculations. Instead, he focuses on the causal assumptions underlying those calculations. He says these assumptions do not hold up because the government failed to prove proximate cause. The Court agrees. Based on the evidence before it, the Court cannot find that Powell's criminal conduct proximately caused M.P.'s reduced earning capacity.

Perhaps the easiest way to explain why the Court has reached this conclusion is to contrast the record here with that in *United States v. Boam,* No. 4:20-CR-00188-BLW, 2022 WL 3910753, at 6 (D. Idaho Aug. 31, 2022), which the government cites in its brief. *See Supp. Br.,* Dkt. 191, at 5. In *Boam*, the Court ordered the defendant to pay restitution to the victim for loss of future income for

her entire adult working life. But the Court had a far more extensive record there. Most significantly, a social worker in that case met with the victim, diagnosed her with complex post-traumatic stress disorder, and testified as to the long-term effects the victim would face, specifically noting she would struggle with maintaining long-term employment. Here, by contrast, although M.P. indicated that she was seen by a psychologist a couple of years ago, the Court does not have any additional information or specifics regarding that assessment. And there is no current mental-health diagnosis backing Dr. Smith's conclusion that M.P. is depressed or anxious to the point of being a "disabled" worker." Nor has any expert testified as to whether M.P. will struggle with maintaining employment now or in the future. M.P. has not spoken specifically about that point. It's also worth noting that after high school—after the abuse ended—M.P. worked three different jobs. All were fulltime positions, and she reported working 50 hours per week in one of those jobs. *See Smith Report,* Dkt. 180-2, at 4. This relatively short history of fulltime employment is not dispositive of the issue. But it does suggest that M.P. is capable of working fulltime jobs. In sum, after having considered the evidence before it, the Court finds that the government failed to demonstrate, by a preponderance, that Powell proximately caused M.P. to be depressed or anxious to the point of being a "disabled" worker as that term is used in Dr. Smith's report.

Likewise, the government failed to demonstrate by a preponderance that

Powell's conduct proximately caused M.P. to decide against attending college. Here, the government relies on Dr. Smith's report of what M.P. said to him. As noted above, Dr. Smith reported that M.P. said she feels strongly that, but for the abuse, she would have pursued her career goal of becoming a pharmacist. The Court is not persuaded. Further, even if the Court government had demonstrated that Powell's criminal conduct proximately caused M.P. not to attend college, it requires major assumptions to connect the harm asserted—again a lifelong reduction in earning capacity—to M.P.'s decision not to attend college. This assumes M.P. will never attend college and that she is otherwise incapable of exceeding the earnings of a high school graduate. As with the mental-health component of the analysis, the Court would have expected additional evidence to back this assertion. A vocational assessment, for example, would have assisted in determining whether M.P. would suffer a lifelong reduction in earnings because of her decision not to attend college after high school. *Cf. United States v. Cantrelle*, No. 2:11-cr-00542-GEB, 2013 WL 1624824, at *8 (E.D. Cal. Apr. 15, 2013) (vocational consultant submitted opinion related to the "educational/vocational financial consequences" of the crime).

 Because the government failed to prove proximate cause, the Court will end the analysis. It is not necessary to address the third required determination noted above (that the amount of M.P.'s losses be proved with reasonable certainty). In

closing, however, the Court will note that this is a difficult case, and that it reached its conclusion only after a lengthy period of deliberation. To be frank, the Court wishes it could award restitution to M.P. She endured years of abuse and there is no doubt that Powell's criminal conduct profoundly harmed her. The challenge here is that the record did not support an award for the type of loss claimed.

## ORDER

IT IS ORDERED that the  government's request for restitution is DENIED. The Court will prepare an amended judgment consistent with this Order.

DATED: June 5, 2025

B. Lynn Winmill
United States District Judge