UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRENTON JARED POWELL,<br><br>Defendant. | Case No. 4:21-cr-00290-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

In June 2025, this Court denied the government's request for restitution. *See* Dkt. 199. The government asks the Court to reconsider that order and award restitution to the victim in this matter. *See* Dkt. 207. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

In May 2023, a jury convicted Powell of all eleven counts in the indictment, which charged him with producing, attempting to produce, and receiving child pornography, in violation of 18 U.S.C. §§ 2251(a) and § 2252A. All counts involved a single minor victim, M.P., and the photographs forming the basis of the charges were taken between October 9, 2010 and June 20, 2012. During trial, there was ample evidence proving that Powell began sexually abusing M.P. when she

MEMORANDUM DECISION AND ORDER - 1

was 11 or 12 years of age; the abuse was ongoing and frequent; it included vaginal penetration and oral sex; and it continued until shortly before M.P.'s 18th birthday.

At sentencing, the Court deferred ruling on the amount of restitution and held an evidentiary hearing in September 2024. The government sought $1,748,424 in restitution, and this loss amount was based solely on M.P.'s alleged diminished earning capacity. *See Gvt. Restitution Mem.*, Dkt. 180, at 1 (seeking restitution "based on lost income pursuant to 18 U.S.C. § 2259(c)(2)(D)"). At the September 2024 combined forfeiture/restitution hearing, the government's expert, Dr. Stan Smith, testified. He presented a range of loss scenarios depending on the level of education M.P. hypothetically would have completed—(1) some college but no degree; (2) a college degree; and (3) a pharmacy degree. Dr. Smith compared these projected earnings scenarios to M.P.'s expected actual earnings and calculated a present-value loss ranging from $1,748,424 (some college) to $5,502,461 (pharmacy degree). The government asked the Court to award the low-end loss amount of $1,748,424.

The Court denied the request, concluding that while M.P. qualified as a victim under § 2259, the government failed to establish by a preponderance that Powell's conduct proximately caused the claimed loss. The government asks the Court to reconsider that order.

## LEGAL STANDARD

Post-judgment motions for reconsideration may be filed in criminal cases. *See United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000). Reconsideration is appropriate if the moving party presents newly discovered evidence, demonstrates that the Court committed clear error or that the initial decision was manifestly unjust, or identifies an intervening change in controlling law. *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc); *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262–63 (9th Cir. 1993). More broadly, reconsideration is "'an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted). And a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation" *Id.*

## ANALYSIS

The government says reconsideration is warranted for five reasons: (1) the Court misunderstood Dr. Smith's loss calculations; (2) the Court misapplied the proximate-cause standard from *Paroline v. United States*, 572 U.S. 434 (2014); (3) the evidence was sufficient to establish diminished earning capacity, and the Court erred by concluding otherwise; (4) the Court erred by failing to award at least $150,000 in restitution, given that this is the statutory minimum remedy in civil

cases; and (5) the Court erred by failing to award at least $3,000 under 18 U.S.C. § 2259(b)(2)(B). The Court will address each argument in turn.

A.   **Dr. Smith's Loss Calculation**

The government first argues that the Court misapprehended Dr. Smith's loss calculation. To support that argument, the government points to this sentence in the Court's June 5, 2025 order: "This assumes M.P. will never attend college and that she is otherwise incapable of exceeding the earnings of a high school graduate." *See Motion,* Dkt. 207, at 4 (quoting Dkt. 199, at 9). The government says this sentence reveals that the Court didn't comprehend that the government was seeking restitution for M.P.'s diminished future earning capacity, or that Dr. Smith's report was flexible in determining the amount of lost capacity. *Id.* The government says "this misapprehension of the calculation of loss contributed to the Court clearly erring in its proximate cause determination." *Id.*

The Court respectfully disagrees. First, the Court understood Dr. Smith's loss calculations and it understood that the government was seeking restitution based on M.P.'s alleged diminished earning capacity. (In fact, in its order, the Court explicitly referred to the fact that the government was seeking restitution based on M.P.'s diminished earning capacity. *See, e.g., June 5, 2025 Order,* Dkt. 199, at 7 ("Based on the evidence before it, the Court cannot find that Powell's criminal conduct proximately caused M.P's *reduced earning capacity*") & 9

("Further, even if the …government had demonstrated that Powell's criminal conduct proximately caused M.P. not to attend college, it requires major assumptions to connect the harm asserted—*again a lifelong reduction in earning capacity*—to M.P's decision not to attend college.") (emphasis added)).

Second, the Court understood that Dr. Smith's report was flexible, in that it calculated different loss scenarios based on different underlying assumptions. Dr. Smith testified to this flexibility during the hearing:

> "[T]he report gives lots of flexibility. . . . [M.P.] may still have the capacity, and she may still go to college someday. And then one could look at some college versus college difference or some college versus pharmacy difference or college versus pharmacy difference.
>
> Now, if you assume that she will, in the long run, get the exact same amount of education that she otherwise would have had but for the crime, then you are correct, there would be no loss.

*Sept. 4, 2024 Tr.*, Dkt. 200, at 99:2-11.

In other words, Dr. Smith was explaining that his report allowed the reader to make varying assumptions about M.P.'s capacity, which, in turn, would result in varying loss amounts. The Court understood this. Significantly, however, the government advanced the loss scenario containing these assumptions: (1) M.P. would reenter the workforce in 2026 and continue working until she was 67; (2) M.P. would not attend college; (3) if Powell had not abused M.P., M.P. would have attended some college but would not have obtained a college degree; (4) M.P.

**MEMORANDUM DECISION AND ORDER - 5**

would remain an "impaired" as a worker throughout her working life because of the abuse; and (5) M.P.'s earnings throughout her working life would be that of a high school graduate.

It was against this backdrop that the Court stated that the harm asserted—a reduction in earning capacity—assumed M.P. would never attend college and was otherwise incapable of exceeding the earnings of a high school graduate. The Court does not see how this statement reveals an error in its thinking or in its ruling.

To further support its assertion that the Court misunderstood the nature of Dr. Smith's loss calculation, the government points to this part of Dr. Smith's testimony—where he analogized to the destruction of a car in explaining diminished earning capacity:

> My car has value even if I say, from today on, I will never drive it, and you total it tomorrow. You owe me my car even though I choose never to exercise its use. That's my choice, not to use it. It was you who destroyed its value.

Dkt. 200, at 97.

This testimony was elicited on cross-examination, after defense counsel suggested M.P. might have decided against entering the workforce for some other reason—such as staying home to care for her children. Using the car analogy, Dr. Smith explained why those sorts of decisions are irrelevant in calculating lost earning capacity. But the Court didn't decline to award restitution because it

MEMORANDUM DECISION AND ORDER - 6

determined that although Powell had proximately caused M.P.'s diminished earning capacity, M.P. likely wouldn't have attended college or worked for some other reason. Rather, the Court concluded that the government failed to establish that Powell proximately caused M.P.'s alleged diminished earning capacity in the first place.

All to say, the Court respectfully disagrees with the government's assertion that the Court misapprehended Dr. Smith's loss theory, which, in turn, led it to err in assessing proximate causation. To reiterate: the Court did not reject or misapprehend Dr. Smith's calculations but instead concluded that the evidence did not support the causal assumptions underlying Dr. Smith's loss calculations.

**B.     Proximate Cause under *Paroline***

The government next contends that the Court misapplied *Paroline v. United States*, 572 U.S. 434 (2014), "by using a strict but-for analysis rather than the proximate cause standard articulated there." Dkt. 207, at 5. The Court disagrees with this characterization of its ruling. Indeed, if the Court had applied a strict but-for standard, it more likely would have found causation satisfied. The logic might have theoretically proceeded along these lines: But for Powell's abuse, M.P. would not have experienced trauma; but for that trauma, she would not have abandoned her educational goals or suffered depression and anxiety such that she would be an impaired worker throughout her working life; and but for that decision and that

"impaired" state, her lifetime earnings would not have diminished. But-for causation sweeps broadly, capturing virtually any downstream effect.

The Court did not apply this sort of a simplistic, but-for causation analysis. Instead, it applied the proximate-cause standard discussed in *Paroline*, ultimately concluding that Dr. Smith's loss calculations rested on causal assumptions that were not supported by the record.

The government also cites *Paroline's* observation that "in cases involving a defendant who produced child pornography, but-for causation could be shown with ease." 572 U.S. at 450. That statement does not relieve the government of its burden to prove proximate cause and the amount of loss by a preponderance of the evidence. It simply recognizes that producer cases often involve more direct causal connections than possession-only cases. Even in direct-abuser cases, however, restitution is not automatic. Rather, the government must show that specific losses were proximately caused by the defendant's conduct and can be calculated with reasonable certainty. Here, for the reasons set forth in the Court's original decision, that standard was not met.

## C. Sufficiency of the Evidence & Expert Testimony

The government also argues that the evidence established diminished earning capacity and that expert testimony was unnecessary. *See* Dkt. 207, at 7-9. The Court is not persuaded by this argument. The Court is not suggesting that there

must be expert testimony in all cases, or even that expert testimony was absolutely necessary here. After all, courts don't decide what evidence a proponent will advance. That's up to the proponent. The Court's role is to evaluate what has been put before it in assessing whether the evidentiary burden has been satisfied.

Here, as explained in its earlier ruling, the Court concluded that the government fell short. As part of explaining why this was so, the Court contrasted the record here with that in *United States v. Boam*, No. 4:20-CR-00188-BLW, 2022 WL 3910753 (D. Idaho Aug. 31, 2022). The government had cited *Boam* in its restitution briefing, noting that the Court had "previously ordered restitution in another matter involving a victim of sexual exploitation where Dr. Smith also testified and submitted a report utilizing the same methodology, for calculated loss of future earnings." *Supp. Br.*, Dkt. 191, at 5 (citing *Boam*). Because the government cited *Boam,* the Court thought it would be useful to compare the differences in the evidentiary records, which, in turn, would help explain the different outcomes. It was in that context that the Court noted the government had not come forth with experts here but had in *Boam*. This compare-and-contrast exercise led the Court to theorize as to what might have strengthened the evidentiary record here (a mental-health and/or a vocation expert, for example). But the Court was not setting a blanket rule that every victim must come forward with expert reports.

**MEMORANDUM DECISION AND ORDER - 9**

In sum, the record did not contain sufficient evidence supporting Dr. Smith's underlying causal assumptions. Accordingly, the Court properly concluded that the government had not met its burden.

### D.     Civil Damages Floor Under 18 U.S.C. § 2255

The government also argues that the Court should award $150,000 in restitution by directing the Court's attention to the statutory damages floor in 18 U.S.C. § 2255. This argument is not properly before the Court because the government could have raised it before. As noted, a motion for reconsideration is not a vehicle for raising new arguments that could have been made earlier.

### E.     Statutory Minimum Restitution

In another argument raised for the first time on reconsideration, the government says the Court erred by failing to award the mandatory minimum restitution required under § 2259(b)(2)(B). That provision directs the Court to award victims "an amount that is not less than $3,000" where the defendant was convicted of a trafficking offense. *See* 18 U.S.C. § 2259(b)(2)(B).[1] But

---

[1] Powell was convicted of three trafficking counts (Counts 9, 10, and 11). The other counts of conviction were production offenses. To the extent the government argues that Section 2259(b)(2) applies to the production offenses, the Court disagrees for the reasons explained in *United States v. West,* 137 F.4th 395, 402 (5th Cir. 2025) (explaining that "Section 2259(b)(2) is inapplicable [to production offenses] because that subsection applies only to restitution orders for *trafficking* in child pornography").

§ 2259(b)(2) establishes a two-step process: (1) The Court must first determine "the full amount of the victim's losses" as defined in § 2259(c)(2); and (2) then set the restitution amount, which must reflect the defendant's relative role but "shall [be] not less than $3,000." *See United States v. Rodriguez*, No. 23-50024, 2024 WL 3338311, at *2 (9th Cir. 2024) (unpublished opinion) (quoting 18 U.S.C. § 2259(b)(2)(A) & (B)). Critically, however, the $3,000 floor applies only after the government has established that the victim suffered some compensable loss proximately caused by the defendant's offense. If there is no evidence of such a loss, the statutory minimum does not apply.

    Here, the government sought restitution based solely on one category of loss: M.P.'s alleged lost future earnings, or diminished earning capacity, under 18 U.S.C. § 2259(c)(2)(D). It offered no proof of any other compensable loss—such as, for example, past or future therapy costs or medical expenses—to support a restitution award. In its restitution request, the government explicitly stated that it was "not seeking restitution related to any counseling or mental health treatment as those expenses have been covered by M.P.'s medical insurance and she has not accrued, nor does she anticipate accruing, losses for such treatment." *Restitution Request*, Dkt. 180, at 7-8. The government also said it was not seeking restitution for any other category of loss under 18 U.S.C. § 2259(c)(2). *Id*. at 8.

    As discussed above, the Court rejected the government's diminished-

earning-capacity theory because the causal assumptions underlying Dr. Smith's calculations were unsupported. In short, the Court remains persuaded that the government failed to prove that Powell proximately caused the asserted loss. And the failure to establish that M.P. suffered compensable loss within the meaning of § 2259(c)(2) means that the $3,000 statutory minimum is not triggered. Accordingly, the Court is not persuaded that it erred.

## ORDER

IT IS ORDERED that the government's motion for reconsideration (Dkt. 207) is **DENIED**.



DATED: November 6, 2025

_____
B. Lynn Winmill
U.S. District Court Judge